IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH, BLUEWATER NETWORK DIVISION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, et al., <br><br> Defendants <br><br> SPECIALTY VEHICLE INSTITUTE OF AMERICA, et al., <br><br> Intervenor-Defendants <br><br> CAPE HATTERAS ACCESS PRESERVATION ALLIANCE, et al., <br><br> Intervenor-Defendants. | No. 1:05cv02302-RCL |

## SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.     Plaintiffs Bluewater Network, the National Parks Conservation Association and Wildlands Center for Preventing Roads bring this action to protect the National Park System from the serious threat posed by use of off-road vehicles ("ORVs") within the units comprising that system (the "Parks") in violation of legal requirements. ORVs cause lasting damage to the Parks' plants and soil, harm their wild life, cause pollution to their air and disrupt their ecosystems.

2.     More than 30 years ago, the President of the United States signed Executive Order 11644, which recognized the harm ORVs could cause to public lands

and imposed on the Secretary of the Interior, among others, specific requirements before the use of ORVs could be permitted on such lands. Those requirements were strengthened when President Carter amended Executive Order 11644 in 1977 by signing Executive Order 11989. The National Park Service (the "NPS"), a division of the Department of the Interior (together, the "Federal Defendants"), duly adopted regulations prohibiting off-road motor vehicle use except in certain types of Parks and, even then, only in areas designated by special regulation in accordance with Executive Order 11644. 36 C.F.R. § 4.10. That Order requires that the Secretary determine that such use would "not adversely affect [the areas'] natural, aesthetic, or scenic values." The requirement that such designations must be made by regulation assures public participation in that determination, as mandated by Executive Order 11644.

3.      Despite the fact that the number of ORV users has skyrocketed in the intervening 30 years and that there has been greatly increased ORV use in the National Park System, Federal Defendants have acted and are acting in disregard of their legal obligations in derogation and violation of the National Park System's fundamental mission; of Executive Order 11644; of Federal Defendants' own regulations; and of other federal statutes. Among other things, Federal Defendants have so loosely interpreted the concept of a "road" that they are permitting ORV use in some Parks in which ORV use is prohibited by 36 C.F.R. § 4.10 and, in others, without the adoption of a special regulation in compliance with that regulation and without the safeguards it requires. And they have failed to carry out Executive Order 11644's mandate that, among other things, they "establish procedures for the enforcement" of the NPS regulations limiting ORV use.

4.      In December 1999 and in related communications, Plaintiff Bluewater Network ("Bluewater") and 70 other environmental organizations petitioned Federal Defendants to adopt or amend regulations to prohibit off-road ORV use in the National Park System, to define "off-road vehicle usage" and to adopt regulations and take other actions needed to ensure compliance with laws and regulations limiting or regulating such use (the "Bluewater Rulemaking Petition").

5.      After a delay of more than 5 years, and only when faced with the prospect of litigation, the NPS finally responded to the Bluewater Rulemaking Petition in May 2005 (the "Response").  The NPS denied the Petition in all respects except one, discussed in the following paragraph.  Federal Defendants' Response to the Bluewater Rulemaking Petition is arbitrary and capricious, an abuse of discretion and in violation of law, within the meaning of 5 U.S.C. § 706(2).  The NPS gave no explanation for its denial of some Plaintiffs' requests.  As to others, the rationale on which Federal Defendants relied is contradicted by Federal Defendants' own recent internal survey of the Parks regarding the extent and effects of ORV use.  While Federal Defendants' Response understated the extent of authorized and unauthorized ORV use throughout the National Park System and the damage to the Parks being caused by ORVs, Federal Defendants' own internal survey demonstrated that a large number of Parks are currently authorizing ORV use in violation of NPS regulations and that both authorized and unauthorized ORV use is causing enormous and widespread damage to many Parks.  Among the Parks being injured by ORV use are some of the "crown jewels" of the National Park System, including Grand Canyon National Park, Yellowstone National Park, Yosemite National Park and Mount Rainier National Park.

6.     With respect to those Parks which could permit ORV use but which have not adopted the required special regulation, the NPS stated that it would direct those Parks to evaluate whether or not to permit continued ORV use in those Parks.  The NPS stated that, if a decision were made to permit continued ORV use in those Parks, the NPS would take those steps legally required for it to permit such use — a multi-year process. However, the NPS denied the Bluewater Rulemaking Petition's request that the NPS terminate officially sanctioned ORV use in those Parks in the interim while those legally required steps were being taken.  Instead, in July 2005, the NPS asked seven Parks to determine whether such interim use should be permitted.  On information and belief, those Parks have all completed that evaluation and none of them has determined to discontinue ORV use while they evaluate and pursue those legally required steps.  As a result, for an indefinite period of time, likely to extend over a number of years, Federal Defendants will continue to authorize ORV use in Parks in which such use is contrary to Federal Defendants' own regulations and contrary to the mandate of Executive Order 11644.  If any of those Parks have in fact not completed their evaluation of whether or not to permit interim use, the effect of Federal Defendants' not having finalized that determination is the same as if they had denied the Rulemaking Petition in this respect. Moreover, the Federal Defendants have unlawfully withheld required action.  Meanwhile, those Parks will be subjected to further damage by unlawful ORV use.  Defendants' refusal to cease this unlawful activity constitutes agency action unlawfully withheld within the meaning of 5 U.S.C. § 706(1).

7.     In addition, Federal Defendants have unreasonably delayed production of internal documents sought by Bluewater in December 2003 pursuant to the Freedom of

Information Act ("FOIA").  Federal Defendants also have unlawfully withheld or redacted documents that they have produced, relying on exemptions to production that Plaintiffs contend, based on information and belief, are inapplicable.

8.      Plaintiffs accordingly seek declaratory and injunctive relief (i) declaring that Federal Defendants have acted arbitrarily and capriciously and in abuse of their discretion and otherwise in violation of law, and that they have withheld action legally required to be taken or have reasonably delayed such action, by denying the Bluewater Rulemaking Petition, and directing Federal Defendants to comply with legal requirements and otherwise to reconsider their response; (ii) enjoining Federal Defendants from permitting ORV use in those eight Parks identified below in which the use of ORVs is prohibited by NPS regulation but in which Federal Defendants are permitting such use by such means as improperly broad interpretations of what constitutes "on road" use of such vehicles; (iii) enjoining, at least until all legally required steps have been completed, the use of ORVs in any portion of the ten Parks identified below which has not been lawfully designated for ORV use by special regulation following an express determination by the Secretary of the Interior that such use will not adversely affect those portions' natural, aesthetic or scenic values, unless and until those legally required steps have been taken; (iv) directing Federal Defendants to establish regulatory procedures designed to ensure enforcement of the prohibition on ORV use in any area that is not legally designated for such use, as required by Executive Order 11644; (iv) directing Federal Defendants to adopt regulations requiring each Park, as mandated by Executive Order 11644, to monitor ORV use to ensure that such use is not causing adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or

historic resources or other natural, aesthetic or scenic values of any part of any Park; and (v) directing Federal Defendants to comply with FOIA with respect to Bluewater's request for documents.

8A.    Notwithstanding any other allegations or assertions in this Complaint, the use of off-road vehicles at Cape Hatteras National Seashore is not included within any of the allegations of this Complaint or in any of the relief sought hereby, in light of the parties' hope that issues relating to off-road vehicle use at Cape Hatteras National Seashore will be addressed by other procedures than this lawsuit.

8B.    Notwithstanding any other allegations or assertions in this Complaint, the use of off-road vehicles at any unit of the National Park System located in the State of Alaska is not included within any of the allegations of this Complaint or in any of the relief sought hereby.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because these claims arise under the laws of the United States.

10.    Venue in this Court is proper under 28 U.S.C. § 1391(e).  The Department of the Interior and the National Park Service are headquartered within the District of Columbia.

## THE PARTIES

11.    Friends of the Earth was founded in 1969 and is based in Washington, D.C.  In 2005, Bluewater Network, a not-for-profit organization based in San Francisco, California, merged into Friends of the Earth.  The term "Bluewater" as used herein means Bluewater Network when referring to time periods prior to that merger, and means

Bluewater Network, a Division of Friends of the Earth, when referring to time periods after that merger.  Friends of the Earth is an environmental advocacy organization that campaigns for a healthy planet by focusing on the root causes of environmental degradation and seeking to help citizens influence the matters that affect their lives and their environment.  For many years, Friends of the Earth has championed protection of the National Park System through lobbying, agency petitions, and the courts.  Bluewater in particular fights against the damage caused by motorized recreation, including snowmobiles, jetskis and ORVs.  Friends of the Earth has over 26,500 individual members in all fifty states.  Those members frequently visit various Parks, and those members' enjoyment of the National Park System is diminished by the harm to those Parks caused by ORV use.

12.     The National Parks Conservation Association ("NPCA") is a non-profit organization based in Washington, D.C.  Founded in 1919, NPCA is an independent membership organization and the largest national organization in the United States dedicated to the protection and enhancement of the National Park System.  In particular, NPCA advocates to improve the management of individual Parks, educates decision-makers and the public about the importance of protecting the Parks, seeks to uphold and strengthen the laws that protect the National Park System and assesses cultural and natural resources in Parks as well as their management to better inform its advocacy work.  On issues related to ORV use, NPCA has successfully campaigned to improve the management and regulation of the use of swamp buggies, personal watercraft, snowmobiles, and all-terrain vehicles in the Parks.  NPCA has more than 300,000 members, residing in every state.  NPCA's members love the Parks and frequently visit

them.  Their enjoyment of the National Park System is diminished by the harm to those

Parks caused by ORV use.

13.     Wildlands Center for Preventing Roads ("Wildlands CPR") is a non-profit

organization based in Missoula, Montana.  It was founded in 1994 by a core group of 16

organizations concerned about the dramatic ecological impacts of wildland roads and

ORVs on public lands.  Wildlands CPR's mission is to revive and protect wild places by

preventing new road construction, promoting wildland restoration through road removal

and limiting ORV use.  Wildlands CPR has more than 400 individual members

throughout the country, in addition to organizational members.  Wildlands CPR's

members frequently visit various Parks, and those members' enjoyment of the National

Park System is diminished by the harm to those Parks caused by ORV use.

14.     Federal Defendants are a department and an agency of the United States

and are charged with administering and conserving the lands within the National Park

System, including regulating vehicular use within the National Park System in

accordance with the 1916 National Park Service Organic Act; the National

Environmental Policy Act of 1969; Executive Order 11644; the Endangered Species Act;

and other applicable laws and regulations.

## FACTUAL BACKGROUND

*The National Park System:  Our National Treasures and Heritage*

15.     The National Park System of the United States comprises 388 Parks

covering more than 83 million acres in 49 States, the District of Columbia, American

Samoa, Guam, Puerto Rico, Saipan and the Virgin Islands. These areas are of such

national significance as to justify special recognition and protection in accordance with various acts of Congress.

16.     The Parks are our country's greatest and most spectacular natural treasures and a unique part of our national heritage.  To be included in the National Park System, an area must possess "national significance."  According to the NPS, an area will be deemed to have national significance if it:

- is an outstanding example of a particular type of resource;

- possesses exceptional value or quality in illustrating or interpreting the natural or cultural themes of our nation's heritage;

- offers superlative opportunities for public enjoyment, or for scientific study; and

- retains a high degree of integrity as a true, accurate, and relatively unspoiled example of a resource.

National Park Service, *Management Policies 2001*.

17.     The National Park Service Organic Act, 16 U.S.C. § 1 *et seq.* ("Organic Act"), created the National Park Service and directed it to "promote and regulate the use of the [National Park System] by such means and measures as conform to <u>the fundamental purpose of the [National Park System], which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations</u>."  16 U.S.C. § 1 (emphasis added).  The Organic Act further empowers the Secretary of the Interior to issue regulations to carry out the purposes articulated in 16 U.S.C. §§ 1 and 1a-1.  16 U.S.C. § 3.

18. The fundamental purpose of the National Park System — the conservation of our national heritage for the enjoyment of future generations — was reaffirmed by Congress in 1978:

> Congress further reaffirms, declares, and directs that the promotion and regulation of the various areas of the National Park System . . . shall be consistent with and founded in the purpose established by [16 U.S.C. § 1] to the common benefit of all the people of the United States.  The authorization of activities shall be construed and the protection, management, and administration of these areas shall be conducted in light of the high public value and integrity of the National Park System and shall not be exercised in derogation of the values and purposes for which these various areas have been established.

16 U.S.C. § 1a-1.  In the NPS' own words, "when a conflict occurs between conserving resources and values and providing for enjoyment of them, conservation is to be predominant."  NPS *Management Policies* § 1.4.3 (2001).

19. In the words of the NPS, *Management Policies* § 1.2 (2001) (emphasis added):

> As the physical remnants of our past, and great scenic and natural places that continue to evolve — repositories of outstanding recreation opportunities — class rooms of our heritage — and the legacy we leave to future generations [the Parks] <u>warrant the highest standard of protection</u>.

*Off-Road Vehicles ("ORVs")*

20. ORVs include any motorized vehicle designed for or capable of cross-country travel on or immediately over land, water, sand, snow, ice, marsh, swampland, or other natural terrain.  16 U.S.C. § 670k; Executive Order 11644.  ORVs include all-terrain vehicles, dune buggies, sand buggies, and other four-wheel drive vehicles.  ORVs can be "street legal" vehicles, such as jeeps or sport utility vehicles.  For purposes of this lawsuit, snowmobiles are excluded from this definition.

21.     All-terrain vehicles ("ATVs") are 3- or 4-wheeled vehicles including dune buggies, sand buggies and swamp buggies and are a subset of ORVs.  ATVs are often designed for use by a single operator and are generally designed so that the operator straddles the seat.  ATVs usually have low-pressure tires to improve their ability to traverse rough terrain.  Some ATVs can reach speeds of 60 miles per hour on flat, smooth trails.  Recent trends have included faster four-wheel ATVs and waterproof ATVs equipped with snorkels so they can travel through streambeds, mud and deep water.

22.     Four-wheel drive vehicles are another subset of ORVs.  These vehicles are a category of high-clearance, street-legal automobiles designed for on-road and off-road use.  Four-wheel drive vehicles can include jeeps, trucks, and sport utility vehicles.  When four-wheel drive vehicles are used for off-road recreation, they are often outfitted with larger tires with varying treads.  The large tires enable the vehicle to travel over a variety of soils, as well as increasing ground clearance.

### _The Adverse Impacts of ORV Use_

23.     Impacts from the use of ORVs are a recognized threat to our nation's public lands.  The Chief of the U.S. Forest Service has called ORV use "one of the key threats facing the Nation's forests and grasslands today."  U.S. Forest Service, "On the Right Trail!" (Jan. 7, 2004, www.fs.fed.us\recreation\programs\ohv).  "The soaring use of [off-highway vehicles] on public lands has meant that even the smallest amount of use off of planned Forest roads and trails has created considerable impacts to the environment." _Id._

24.     The importance of Federal Defendants' compliance with the legal requirements relating to ORV use is demonstrated by the experience at Big Cypress

National Preserve, a unit of the National Park System.  Pursuant to the settlement of a

legal action relating to the use of ORVs in that Park, Federal Defendants conducted a

review of the impact of such ORV use and published the *Final Recreational Off-Road*

*Vehicle Management Plan/Supplemental Environmental Impact Statement/Big Cypress*

*National Preserve* (hereafter, the "Big Cypress ORV Management Plan/SEIS").  The Big

Cypress ORV Management Plan/SEIS documented devastating impacts of ORV use in

the Big Cypress National Preserve.  For example, the Big Cypress ORV Management

Plan/SEIS documented that:

- ORVs had created ruts that were sometimes as deep as two feet.  Those ruts affect water flows, which causes other damage.  Aerial infra-red photographs have revealed a network of features caused by ORV use in Big Cypress National Preserve totaling approximately 29,000 miles.

- ORV use can result in the loss of soil cover, and once disturbed, few natural mechanisms are capable of restoring soil cover and contour.  These effects are therefore cumulative and worsen over time.

- ORV use has been shown to alter plant species composition and distribution and to damage juvenile trees.

- ORV use has a dramatic effect on wildlife, including by reducing their hunting and mating opportunities.

- ORV use has substantially impaired visitor enjoyment.

25.     As part of its efforts to educate the government and the public on the

effects of ORV use, Bluewater compiled a report in 1999 summarizing the ecological

effects of ORV use.  This report, entitled *Off-the-Track: America's National Parks under*

*Siege*, described the following well-documented impacts from ORVs.

26.     *Wild Life*:  Wild life has been harmed directly or indirectly by human

activity associated with ORV use.  Injuries or other harm to the following endangered or

threatened species arising from use of ORVs have been documented: desert tortoises,

Florida panthers, desert kangaroo rats, loggerhead sea turtles, piping plovers, red-cockaded woodpeckers, wood storks, and bald eagles. For example, piping plover chicks have a high chance of getting run over by ORVs because they stand inside, walk, and run along ORV wheel ruts, have difficulty climbing out of deep ruts, and are difficult to see. ORV use also harms wildlife indirectly. Noise from the vehicles disturbs animals and may cause them to avoid large areas of their habitat. Damage from ORV use can affect food sources and disturb or destroy breeding sites.

27. *Vegetation*: Damage caused by ORV use kills vegetation and inhibits plant recovery in affected areas. ORVs damage vegetation directly by running over plants, breaking branches apart, and cutting into root systems. The U.S. Geological Survey has documented the destruction by ORVs of juniper and Joshua trees more than three meters tall. Indirect harm to vegetation occurs through damage to the soil.

28. *Soils*: ORV use directly affects the soil by disrupting the soil surface and destroying soil stabilizers. When ORVs drive over the soil, their tires cut into the soil, crushing and slicing into root systems, uprooting plants, and disturbing soil crusts. This damage can promote erosion and decrease water infiltration and fertility. The weight of ORVs combined with the force of their travel over the soil surface also results in soil compaction. Compaction kills organisms living in the upper soil layers; it also promotes erosion and decreases fertility. The combined forces of surface destruction and compaction can lead to erosion rates that are five to fifty times greater than normal. Estimates on the time required for damaged soils to recover range from decades to centuries.

29.  *Air Quality*:  ORVs are also a significant source of air pollution.
According to recent data from the U.S. Environmental Protection Agency, ATVs emit
approximately 130,000 tons of hydrocarbon, 550,000 tons of carbon monoxide and 4,000
tons of nitrogen oxide each year in the United States.  Approximately nineteen percent of
ATVs are powered by extremely-inefficient two stroke engines, and the rest are powered
by four-stroke engines.  Even the more efficient four-stroke engines produce substantially
more pollutants than modern automobile engines.  The California Air Resources Board
has determined that two-stroke ORVs produce 118 times as many smog-forming
pollutants on a per-mile basis than are produced by modern automobiles.  ORVs emit a
number of pollutants, including aldehydes, 1,3-butadiene, benzene, and other polycyclic
aromatic hydrocarbons that are classified as hazardous air pollutants under the Clean Air
Act.  ORVs also impair air quality by creating a large amount of dust while traveling in
dry areas.  The dust decreases visibility and aggravates respiratory conditions such as
asthma and bronchitis.

30.  *Water Quality*:  ORVs that travel along or in streambeds cause water
pollution because their fuel is released directly into the water.  Two-stroke engines
discharge one-third of their fuel unburned into the environment and are a significant
source of water pollution nationwide.  Even low levels of contaminants released by
ORVs can kill zooplankton and hinder fish growth.  ORVs also create water pollution by
causing soil erosion.  Eroded soil washes into rivers and other waterways.  The deposition
of soil in affected waterways can lead to increased sedimentation, increased turbidity, and
changes in water temperature.  All of these effects can harm aquatic vegetation and
wildlife.

31.     *Noise*:  ORVs are extremely loud.  Even with mufflers, noise levels from ORVs are in the range of 81-111 decibels (dB) per unit.  The U.S. Occupational Safety and Health Administration regulates workplace exposure to noises at levels as low as 90 dB.  The natural ambient noise of a forest, by contrast, is about 15 dB, meaning that ORVs can be over a billion times noisier than the natural forest.  Noise produced by ORVs disrupts the natural peace and quiet of the Parks and disturbs other Park visitors.  Noise can also disturb wildlife, causing them to avoid large areas surrounding the site of ORV activity.

32.     *Cultural Resources*:  In addition to their natural wonders, many Parks contain resources of historical and archeological significance.  ORVs not only destroy cultural resources by driving over them, but they also provide an easy means of access for vandals and looters to reach resources located in remote areas.

33.     *Safety*:  There is an extremely high rate of ORV accidents.  Most accidents injure the ORV driver, but there are substantial risks to non-ORV users.  ORVs are often operated at high speed in conditions that provide for reduced visibility.  In these conditions there is often insufficient time to avoid accidents.  For example, the U.S. Consumer Products Safety Commission reports that more than 100,000 people are killed or injured in ATV accidents every year.  A disproportionate number of these accidents are to children under the age of 16.

34.     The recovery time for resources damaged by ORV use ranges from years to centuries.  In particular, damage to soils and increased erosion can take several lifetimes to heal.  Some damage, such as damage to cultural resources, is irreparable.

*Government Responses to the Problems of ORV Use*

35.    For over thirty years, the U.S. Government has recognized the threat posed by ORV use.

36.    As part of the implementation of the National Environmental Policy Act, President Nixon signed Executive Order 11644 on February 8, 1972.  Executive Order 11644 "establish[ed] policies and provide[d] for procedures [to] ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands."  Executive Order 11644.

37.    Executive Order 11644 directed the head of each federal agency that manages public lands (including the Secretary of the Interior) to promulgate regulations "to provide for administrative designation of the specific areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted," and further directed that the designation of areas for ORV use be in accordance with three principles:

> (1)    Areas and trails shall be located to minimize damage to soil, watershed, vegetation, or other resources of the public lands.
>
> (2)    Areas and trails shall be located to minimize harassment of wildlife or significant disruption of wildlife habitats.
>
> (3)    Areas and trails shall be located to minimize conflicts between off- road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors.

16

38.     Executive Order 11644 prohibits the designation of ORV use in the
National Park System, unless the Secretary of the Interior specifically "determines that
off-road vehicle use in such locations will not adversely affect their natural, aesthetic, or
scenic values."  Executive Order 11644, § 3(a)(4).  In making determinations and
designations, moreover, Executive Order 11644 requires the Secretary to "ensure
adequate opportunity for public participation in the promulgation of such regulations and
in the designation of areas and trails under this section."  *Id.* § 3(b).

39.     Executive Order 11644 also required the Secretary of the Interior to
prescribe appropriate penalties for violation of regulations adopted pursuant to that Order
and to establish procedures for the enforcement of those regulations.

40.     The Executive Order also requires the Secretary of the Interior to monitor
the effects of the use of ORVs on lands under the Secretary's jurisdiction and, on the
basis of information so gathered, from time to time to amend or rescind designations of
areas or other actions taken pursuant to the Order as necessary to further its policy.  *Id.*
§ 8.

41.     In 1977, President Carter strengthened the monitoring provisions of
Executive Order 11644 by adding a directive that "the respective agency head shall,
whenever he determines that the use of off-road vehicles will cause or is causing
considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural
or historic resources of particular areas or trails of the public lands, immediately close
such areas or trails to the type of off-road vehicle causing such effects, until such time as
he determines that such adverse effects have been eliminated and that measures have

been implemented to prevent future recurrence."  Executive Order 11989, adding Section 9 to Executive Order 11644.

42.     To fulfill the obligations imposed by Executive Order 11644, the NPS adopted a regulation prohibiting ORV use in the National Park System except in designated areas within certain types of Parks.  The NPS regulation states that "[r]outes and areas designated for off-road motor vehicle use shall be promulgated as special regulations" and that "[t]he designation of routes and areas shall comply with . . . [Executive Order] 11644."  36 C.F.R. § 4.10(b).  The regulation further provides that ORV routes and areas may only be designated "in national recreation areas, national seashores, national lakeshores and national preserves."  *Id*.  In other words, ORVs may not be permitted in any type of Park which is not a national recreation area, a national seashore, a national lakeshore or a national preserve.

43.     ORV use has skyrocketed in the 30 years since Executive Order 11644 was issued.  In 1972, there were an estimated 5 million ORV riders; by 2000, that number had grown to 36 million.

44.     Despite this increased use — and the concomitant increase in damage to the Parks — the NPS has permitted ORV use in the National Park System in violation of the Executive Order and the NPS' own regulations.  A "Talking Points" memo from one national seashore, where ORV use has long been permitted despite the lack of a special regulation designating ORV routes, goes so far as to admit:

> The most immediate impact to beach driving could be a lawsuit brought against the National Park Service for failure to comply with Executive Orders 11644 and 11989 and with 36 C.F.R. 4.10.  <u>The privilege of beach driving is very vulnerable to a suit of this kind.</u>  It is not hard to imagine a federal judge ordering the suspension of beach

driving until [the national seashore] has complied with
these orders and regulations.

### *The Bluewater Rulemaking Petition*

45.     On December 9, 1999, Bluewater, joined by 70 other leading

environmental organizations, submitted the Bluewater Rulemaking Petition to the

Director of the NPS requesting that the NPS issue a rule prohibiting ORV use in all off-

road areas in the National Park System.  The petition further requested that the NPS

define "off-road vehicle usage" as any use other than use on pavement or high-standard

gravel roads.  The Petition also sought the adoption of procedures to ensure compliance

with current regulations limiting ORV use and the adoption of procedures requiring more

effective monitoring of ORV use.

46.     The Bluewater Rulemaking Petition was accompanied by a report,

prepared by Bluewater Network, entitled *Off-the-Track: America's National Parks under

Siege*, which summarized the then-available evidence on the potential for ORV use to

harm the Parks.  *Off-the-Track* included a summary of the results of Bluewater's 1999

survey of ORV use in the National Park System as well as the results of other research.

47.     On January 8, 2001, the Director of the NPS sent a letter to Bluewater

stating that the Bluewater Rulemaking Petition "raises valid concerns regarding resource

impacts and the needed management of off-road vehicle use."  The letter also stated that,

in part in light of issues that had arisen in the Big Cypress National Preserve (*see*

paragraph 24 above), "a Service-wide assessment of off-road vehicle use is imminent."

48.     On March 9, 2004, Bluewater Network delivered a letter to the Service's

Director signed by 33 artists, photographers and entrepreneurs concerned about the

economic threat that unregulated ORV use in the National Park System posed to their

economic livelihood. Those signatories joined the 70 environmental organizations which had originally signed the Bluewater Rulemaking Petition in urging the Service to grant the Petition. That letter stated that "collectively, wildlife and landscape art are a billion dollar industry. Our shops, studios and galleries employ thousands of people and play a significant role in countless local economies. ORV use threatens our livelihoods. We call upon the NPS to abide by its conservation mandate and protect the Parks, as well as our businesses, from highly damaging ORVs."

49.     Nevertheless, by early 2004, more than 4 years after the Bluewater Rulemaking Petition had been filed, the NPS had not responded further to that Petition. On March 24, 2004, therefore, Bluewater's attorneys sent Federal Defendants a letter advising that they had been authorized to file suit against Federal Defendants for failing to act on the Bluewater Rulemaking Petition. However, in an effort to avoid litigation, those attorneys requested a meeting to discuss the Bluewater Rulemaking Petition and the problem of ORV use in the National Park System.

50.     As a result of Bluewater's request, representatives of the Federal Defendants met with Bluewater in July 2004. At that meeting, the Deputy Director of the NPS asked for the opportunity to conduct an internal survey in order to determine the extent to which ORV use is a problem in the National Park System. He asked that Bluewater postpone litigation to permit that survey process to go forward. At that meeting, and in subsequent correspondence and meetings, Bluewater asked that the NPS terminate ORV use which was currently being permitted in contravention of Executive Order 11644 and 36 C.F.R. § 4.10, at least while steps were being taken to bring the NPS into compliance with those requirements.

*The National Park Service's Own Survey Demonstrates the*
*Widespread Injury ORVs Are Causing in the National Park System*

51.     After the July 2004 meeting, the NPS developed a survey designed to identify those Parks in which ORV use had been authorized and by what method (*e.g.*, statute, special regulation, management plan); to gather information about the extent of unauthorized ORV use occurring in the National Park System; and to determine whether ORV use is negatively affecting the System's Parks.

52.     More than 165 Parks reported either authorized or unauthorized ORV use. Moreover, more than 100 Parks reported that ORVs are causing recognizable environmental impacts, resource degradation or visitor use conflicts.  Many other Parks did not know whether or not ORV use was causing such impacts, in part due to a lack of any organized monitoring of ORV use.  In addition, the NPS did not ask in its survey whether ORV use which had been authorized is negatively affecting the authorizing Parks, so Federal Defendants are unaware of such negative impacts.

53.     Despite the fact that the NPS' own regulations clearly state that ORV use may be permitted only by special regulation, use is permitted in at least ten Parks by management policy or similar means adopted only by the management of the Park and without an adequate opportunity for public review and comment.  Those Parks are:

> Amistad National Recreation Area
> Bighorn Canyon National Recreation Area
> Big South Fork National Recreation Area
> Cape Lookout National Seashore
> Curecanti National Recreation Area
> Glen Canyon National Recreation Area
> Lake Meredith National Recreation Area
> Little River Canyon National Preserve
> Mississippi National Recreation Area
> Whiskeytown National Recreation Area

Permitting ORV use in the National Park System without the adoption of a special

regulation promulgated under the requirements of the Administrative Procedure Act

violates the NPS' own regulations.  36 C.F.R. § 4.10(b).  Moreover, designation of

permissible ORV routes and areas without the adoption of a regulation violates the

provisions of Executive Order 11644, incorporated into that NPS regulation, both

because it deprives the public of adequate rights of participation in the decision-making

process and because the Secretary of the Interior does not make an express determination,

as required by the Executive Order, that such ORV use "would not adversely affect [the

routes' or areas'] natural, aesthetic, or scenic values."  That Executive Order implements

the National Environmental Policy Act, 42 U.S.C. § 4321.  Adoption of a special

regulation relating to ORV use would require Federal Defendants to undertake and

publish an environmental impact statement.

    54.    Despite the Service's own regulatory prohibition on the designation of

ORV use in areas other than in national recreation areas, national seashores, national

lakeshores or national preserves, Federal Defendants permit ORV use in at least eight

Parks that do not fall into one of these categories.  Those Parks are:

> Ala Kahakai National Historic Trail
> Arches National Park
> Badlands National Park
> Canyonlands National Park
> Capitol Reef National Park
> Organ Pipe Cactus National Monument
> Ozark National Scenic River
> Redwood National Park

    55.    Some of the foregoing Parks claim that they are not violating 36 C.F.R.

§ 4.10 and Executive Order 11644, but that position is based on an interpretation of those

authorities that is contrary to their letter, purpose and meaning.

56.     Unlawful ORV use has had a widespread and significant deleterious effect.  Responses to the NPS survey reported, among other impacts, rutting, scars and other damage to soils; damage to vegetation and wildlife; visitor conflicts; and other significant impacts on resources.  These impacts were generally based only on visual observations.  More intensive study would likely reveal more extensive impacts.

57.     One reason more intensive study has not been undertaken is that, even in properly designated ORV use areas, Federal Defendants have not fulfilled their obligations under Executive Order 11644 and the National Environmental Policy Act to monitor the effects of ORV use in the National Park System.  Responses to the NPS survey revealed that monitoring is performed in only a relatively small number of Parks, and the monitoring that is performed is generally limited to sporadic, unsystematic visual observation.  For example, in a recent press release, the Superintendent of one National Park Service Group admitted, "I . . . don't know what kind of specific impacts off-road vehicles are having on our beaches, whether those impacts are transitory or long-term. Or whether beach driving here is causing degradation to the resources I'm charged with protecting . . . ."

58.     Federal Defendants also have not fulfilled their obligations under Executive Order 11644 to amend or rescind designations of areas or to "immediately close such areas or trails to the type of off-road vehicle" that is causing "considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands."  Executive Order 11644 § 8 and § 9.  The NPS survey did not even inquire about any such impacts in those areas in which ORV use is authorized.

*Federal Defendants' Response to the Bluewater Rulemaking Petition*

59.    In May 2005, more than five years after the Bluewater Rulemaking Petition was filed, the NPS responded to that petition, effectively denying it.

60.    The NPS Response effectively denied the Bluewater Rulemaking Petition's request for termination of OHV use in those Parks which had authorized such use but which were not national recreation areas, national seashores, national lakeshores or national preserves, as identified in the NPS survey.  The Response provided no explanation or justification for that denial.

61.    The NPS Response effectively denied the Bluewater Rulemaking Petition's request that the NPS define "off-road use" for the purpose of administering its regulatory scheme.  The Response provided no explanation or justification for that denial.

62.    The NPS Response denied the Bluewater Rulemaking Petition's request for the adoption of enforcement procedures.  In their Response, the NPS attempted to justify that position by claiming that only "several" Parks are experiencing unauthorized ORV use, that unauthorized use is "rarely occurring" in wilderness and that the level of resource damage "appears to be less than significant."  The survey responses available to Plaintiffs, however, make clear that these statements are simply not true.  More than 130 Parks responded to the survey by reporting that they experience unauthorized ORV use, certainly not a "rare" occurrence, whether or not in wilderness areas.  Moreover, more than 100 of those Parks reported that ORV use is causing adverse impacts and an additional 10 Parks reported that they did not know whether or not ORV was causing adverse effects.  Examples of Parks reporting unauthorized ORV use are:  Yosemite National Park, California; Yellowstone National Park, Wyoming, Montana and Idaho; Grand Canyon National Park, Arizona; Arches National Park, Utah; Canyonlands

National Park, Utah; Death Valley National Park, California; Olympic National Park, Washington; Appalachian National Scenic Trail, which extends through 14 eastern states; Badlands National Park, South Dakota; Mount Rainier National Park, Washington; Saguaro National Park, Arizona; Capitol Reef National Park, Utah; Lake Mead National Recreation Area, Arizona and Nevada; Lava Beds National Monument, California; Hagerman Fossil Beds National Monument, Idaho; Flagstaff Area National Monuments, Arizona; Big Thicket National Preserve, Texas; Glen Canyon National Recreation Area, Arizona and Utah; Ice Age National Scenic Trail, Wisconsin; Parashant National Monument, Arizona; North Country National Scenic Trail, which extends through 7 northern states; and Juan Bautista de Anza National Historic Trail, California and Arizona.

63.     For example, Yosemite National Park reported that "[t]here are numerous incident[s] per year" of violations by ORV users, resulting in "degradation to the resources and visitor use conflicts."  In Yellowstone National Park, two men on ORVs caused considerable damage to Lone Star Geyser and its environs by driving around the geyser cone.  Other ORV drivers harassed bison at Yellowstone National Park.  Grand Canyon National Park reported that unauthorized ORV use was occurring and was causing "impact damage to vegetation and soil," among other things.  At Arches National Park and Canyonlands National Park, it was reported that "there are a number of locations where off-road travel has destroyed microbiotic soil crust, destroyed desert vegetation, crushed animal burrows or damaged slick rock."  "[A]ny off-road use in the fragile desert environment," those Parks continued, "has the potential to create substantiated impacts that may last for years, both from a visual standpoint as well as

directly to the flora and fauna." Those Parks also reported that "operators are rarely caught due to staffing limitations." Death Valley National Park similarly reported that unauthorized ORV use was causing "recognizable environmental impacts, resource degradation, or visitor use conflicts." Mount Rainier National Park reported that "recognizable environmental impacts include trails created in wilderness areas." The trails are approximately three to five feet in width and are accompanied by "soil erosion and plant damage." Big Thicket National Preserve reported that it "has had and continues to have a serious problem" with ORV use, including "in sensitive areas" causing "significant off-road damage." The Appalachian National Scenic Trail reported that unauthorized ORV use "is one of our most pernicious management problems" causing "recognizable environmental impacts, resource degradation and visitor use conflicts." A large number of other Parks reported similar extensive unauthorized ORV use and resulting significant damage. Such widespread unauthorized ORV use, causing such widespread adverse effects, made the NPS' rejection of Bluewater's request for additional enforcement procedures particularly arbitrary and capricious.

64. The NPS Response denied the Bluewater Rulemaking Petition's request for the adoption of procedures requiring monitoring of ORV use in the Parks. In an effort to justify its position, the NPS claimed that "there is ongoing visual monitoring by NPS personnel of the areas used by [ORVs]." If significant damage is found, the NPS asserted, that information would support a determination to close that area. In support, the NPS cited the closure of Salt Creek Road in Canyonlands National Park. The NPS closed Salt Creek Road to ORV use, however, only after a federal court had enjoined the NPS from continuing to permit ORV use on that route. Moreover, the NPS' own internal

survey demonstrated that there is little if any monitoring of ORV use in the Parks and that the NPS is not even aware of all the damage being done by ORVs.  Of those Parks reporting ORV use, 14 reported that they had no monitoring of such use at all and an additional 48 reported that their monitoring was "visual only."  Visual monitoring alone is insufficient to discover all of the adverse impacts known to be caused by ORV use, as described in paragraphs 23-34 above.  In addition, ORVs can cause water pollution, noise pollution and air pollution, none of which may generally be determined by visual monitoring.  And visual monitoring is similarly not able to discover theft of historical and archeological resources, as reported by Grand Canyon National Park, or the illegal taking of game, as reported by Rocky Mountain National Park.  Most significantly, a large number of Parks reported in their survey responses that their available staff was simply too limited to undertake much monitoring relating to ORVs.

65.     The NPS agreed with Plaintiffs that a number of Parks had "inappropriately" authorized what the NPS called "off-highway vehicles," or "OHVs," without having adopted special regulations.  With respect to those Parks, the NPS stated: "[I]t is our intent that parks allowing [ORV use] begin taking the necessary steps to appropriately authorize the use [of ORVs] by promulgating special regulations."  The process of promulgating such regulations could take a number of years.  Nevertheless, the NPS denied Bluewater's request that the NPS at least halt ORV use in those Parks while the process of evaluating and adopting such special regulations is being pursued.  Rather than prohibiting ORV use unless and until they determine that such use would not adversely affect those Parks, Federal Defendants stated that ORV use could be continued there unless and until it was concluded that ORVs would cause "significant" adverse

effects.  In stating that "significant" damage would be required to support a determination to stop ORV use in any area, Federal Defendants imposed a standard higher than that set forth in the Executive Order and turned the process imposed by that Order and by 36 C.F.R. § 4.10 on its head.  The Response stated that those Parks would be asked to evaluate whether ORV use should continue and, if so, whether it should be permitted to continue during the time required for those Parks to evaluate and adopt special regulations.

65A.   The NPS Response also stated that, while the NPS agreed that the use of certain ORVs presented a safety concern, the NPS would not address that concern. Moreover, Federal Defendants also took the position that they would not address air quality issues concerning ORV use in the National Park System.  Federal Defendants have therefore abandoned their obligation to protect the National Park System from the pollution caused by ORVs and their obligation under Executive Order 11644 "to promote the safety of all users."  Executive Order 11644, § 1.  NPS case incident reports, however, make clear that ORVs present a significant safety hazard which should not be ignored by the NPS in deciding whether or not to continue permitting ORV use.  For example, an ORV fell off a cliff in New River Gorge National River, and another ORV user rode over a cliff in Canyonlands National Park.  At Lake Meredith, an ORV slipped backwards while going up a steep slope, and the driver was killed when he and the ORV fell over a series of ledges.  At Cape Hatteras National Seashore, a man driving an ORV on the beach struck and injured two people walking on the beach.  In another incident at Cape Hatteras, an ORV flipped and seriously injured a passenger.  At Assateague Island National Seashore, an ORV accident on the beach led to deaths of two Park visitors.  At

Organ Pipe Cactus National Monument, a 14 year-old boy died by driving an ORV into a tree.

65B.    By letter of June 13, 2005, Plaintiffs asked the NPS to reconsider its decisions in some respects and to provide clarifications and additional information in other respects.  Federal Defendants failed to respond to that letter.

*The Federal Defendants Request that Seven Parks Evaluate Continued ORV Use*

65C.    On July 13, 2005, as stated in the Response, the Deputy Director of the NPS directed seven Parks to evaluate existing ORV use where such use is being permitted without a special regulation as required by 36 C.F.R. § 4.10(b).  Those Parks (not including Cape Hatteras National Seashore) were:

>                   Big South Fork National Recreation Area
>                   Cape Lookout National Seashore
>                   Curecanti National Recreation Area
>                   Glen Canyon National Recreation Area
>                   Lake Meredith National Recreation Area
>                   Little River Canyon National Preserve

The Deputy Director directed that that evaluation be completed within 60 days.  The memorandum stated that the Parks to which it was addressed "have identified [themselves] as having OHV use that does not comply with the regulation found in 36 CFR 4.10(b).  The purpose of the evaluation is to review the types of resource impacts associated with existing use and to determine whether to allow OHV use to continue on an interim basis while the OHV Use Management Plans, special regulations, and their required environmental compliance, are being prepared."  The memorandum expressly related this directive to the Bluewater Rulemaking Petition.  The memorandum also stated:

> After evaluating the impacts to the resources listed above,
> the park superintendent must be able to make a
> determination that the use of OHV will not or is not
> causing considerable adverse effects on the soil, vegetation,
> wildlife, wildlife habitat or cultural or historic resources of
> particular areas consistent with Executive Orders
> 11644/11989 and NPS Management Policies 2001, section
> 8.2.3.1. If you cannot make that preliminary determination,
> you should restrict or prohibit use as appropriate to bring
> that use into compliance with the Executive Orders and
> NPS Management Policies.

On information and believe, all of the Parks to which that memorandum was addressed have completed their interim evaluation and have concluded that ORV use should continue to be permitted while those Parks undergo the evaluations and rulemaking processes required to bring themselves into compliance with the Executive Order and the NPS' regulations. If Federal Defendants have not finalized their determinations concerning permitting or terminating ORV use in any of those Parks during that interim period, the effect of Federal Defendants' not having finalized that determination is the same as if they had denied the Rulemaking Petition in this respect. Moreover, the Federal Defendants have unlawfully withheld required action.

### *Bluewater's Request for Documents Under the Freedom of Information Act*

66.     On December 12, 2003, Bluewater filed a request with the Department of the Interior and the NPS under FOIA, 5 U.S.C. § 552, for documents relating to ORV use in the National Park System.

67.     Federal Defendants have responded to that request in part by providing a number of documents. However, more than two years later, Federal Defendants have not yet produced all documents that Plaintiffs understand are in Federal Defendants' possession and are responsive to Bluewater's request. Moreover, Federal Defendants

have withheld or redacted some documents based upon various asserted exemptions under 5 U.S.C. § 552(b).  On information and belief, these exemptions are not applicable to the withheld or redacted documents.

## FIRST CLAIM FOR RELIEF

### (NPS Response to Bluewater Rulemaking Petition)

68.     Section 4(e) of the Administrative Procedure Act, 5 U.S.C. § 553(e), provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

69.     Section 2(2) of the Administrative Procedure Act, 5 U.S.C. § 551(2), defines "person" as "an individual, partnership, corporation, association, or public or private organization other than an agency."

70.     Section 10(e)(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2), authorizes a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Section 10(e)(1) of that Act, 5 U.S.C. § 706(1), authorizes the reviewing court to "compel agency action unlawfully withheld."

71.     Bluewater submitted its Rulemaking Petition in exercise of the right granted by section 4(e) of the Administrative Procedure Act.

72.     The NPS' Response to the Bluewater Rulemaking Petition, in which it effectively denied the Petition, constitutes an "agency action" as that term is defined by section 2(13) of the Administrative Procedure Act, 5 U.S.C. § 551(13), and subject to judicial review under section 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704.

73.     The NPS Response is legally inadequate in a number of procedural and substantive respects, including, but without limitation, the following:

(a)     Federal Defendants' Response was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" to the extent that it denied Bluewater's request that Federal Defendants repeal existing authorizations for ORV use in the following Parks which are not a national recreation area, national seashore, national lakeshore or national preserve:

> Ala Kahakai National Historic Trail
> Arches National Park
> Badlands National Park
> Canyonlands National Park
> Capitol Reef National Park
> Organ Pipe Cactus National Monument
> Ozark National Scenic River
> Redwood National Park

Federal Defendants' own regulations preclude them from authorizing ORV use in any of those Parks.  Federal Defendants made inadequate inquiries into and had inadequate knowledge of the adverse effects of ORV use in those Parks.  Federal Defendants' Response was also not in accordance with laws designed to protect the Parks, endangered species and the environment, among other things.  No reasons were given for the rejection of this request.

(b)     Federal Defendants' Response constituted "agency action unlawfully withheld" or unreasonably delayed and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" to the extent they refused promptly to repeal, at least until all legally required steps to authorize ORV use in a particular Park had been taken, official authorizations of ORV use in the following Parks which have not

implemented such authorization by special regulation adopted in compliance with 36

C.F.R. § 4.10, Executive Order 11644 and other applicable laws:

> Amistad National Recreation Area
> Bighorn Canyon National Recreation Area
> Big South Fork National Recreation Area
> Cape Lookout National Seashore
> Curecanti National Recreation Area
> Glen Canyon National Recreation Area
> Lake Meredith National Recreation Area
> Little River Canyon National Preserve
> Mississippi National Recreation Area
> Whiskeytown National Recreation Area

Instead of repealing such illegal authorizations until required legal steps have been taken

to authorize such use, if indeed such use can be demonstrated to comply with all legal

requirements, Federal Defendants' Response permits admittedly unlawful authorizations

to remain in place indefinitely while the necessary evaluations and analyses and legal

steps are undertaken, a process that could take years.  While Federal Defendants directed

six of the Parks identified above to evaluate whether ORV use should continue to be

permitted while legally required steps to authorize such use have been taken, all of those

Parks have completed that evaluation, on information and belief.  To the extent a final

decision has not been made as to whether or not to permit such interim use with respect

to any of those Parks, the effect of Federal Defendants' not having finalized that

determination is the same as if they had denied the Rulemaking Petition in this respect.

Moreover, the Federal Defendants have unlawfully withheld required action.

Alternatively, Federal Defendants have unreasonably delayed making a final decision as

to whether to continue such interim use.  In addition, the standard Federal Defendants

have applied in making those evaluations is not in accordance with law, at least to the

extent that that standard requires a showing of "significant" or "considerable" adverse effects in order to terminate ORV use in those Parks.

(c)     Federal Defendants' Response was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" to the extent they refused to adopt regulations defining "off-road vehicle usage."  By failing to define off-road use, Federal Defendants have effectively created a loophole in the regulations that allows ORV routes to be created without complying with Executive Order 11644 and other NPS regulations simply by denominating those routes as "roads."  No reason was given for rejecting this request.

(d)     Federal Defendants' Response was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" to the extent they refused Bluewater's request that regulations be adopted requiring each Park to monitor ORV use by means reasonably designed to identify deleterious effects on the Parks.  Occasional visual monitoring does not comply with Executive Order 11644, among other things.

(e)     Federal Defendants' Response was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" to the extent Federal Defendants refused to adopt procedures, as required by Executive Order 11644, designed to ensure enforcement of and compliance with legal restrictions on ORV use in the Parks.

(f)     Federal Defendants' Response was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" because, upon information and belief, the considerations and factors which influenced their decision on Bluewater's Rulemaking Petition, and the procedures that they followed in making that decision, were legally inadequate, in that, among other things, those considerations and factors included

34

ones not set forth in the Response, or the administrative record therefor, and which were not rationally related to compliance with current laws.

74.     Federal Defendants' Response was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" to the extent Federal Defendants have determined not to consider air quality and safety concerns in connection with their decisions relating to the authorization and management of ORV use in the Parks.

## SECOND CLAIM FOR RELIEF

### (Illegal Designation of ORV Use Areas in Ineligible Parks)

75.     Section 10(e)(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2), states, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law [or] without observance of procedure required by law."

76.     By regulation, the NPS authorizes the designation of ORV use areas only "in national recreation areas, national seashores, national lakeshores and national preserves." 36 C.F.R. § 4.10.

77.     Contrary to their own regulation and in some cases by interpreting "roads" so broadly as effectively to vitiate that regulation, Federal Defendants have adopted Park-specific management plans and similar measures that permit ORV use in Parks which are not national recreation areas, national seashores, national lakeshores or national preserves, including:

> Ala Kahakai National Historic Trail
> Arches National Park
> Badlands National Park
> Canyonlands National Park
> Capitol Reef National Park
> Organ Pipe Cactus National Monument

Ozark National Scenic River
Redwood National Park

78.     Allowing ORV use in Parks other than national recreation areas, national seashores, national lakeshores and national preserves is contrary to law.

## THIRD CLAIM FOR RELIEF

### (Illegal Method of Permitting ORV Use)

79.     Section 10(e)(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2), states, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law [or] without observance of procedure required by law."

80.     By regulation, the NPS prohibits ORV use except in certain types of Parks and only then on routes or in areas designated by special regulations promulgated in compliance with Executive Order 11644.  36 C.F.R. § 4.10(b).

81.     Executive Order 11644 requires the Secretary of the Interior to determine specifically that ORV use "will not adversely affect [the designated area's] natural, aesthetic, or scenic values" before designating routes or areas within the National Park System for ORV use.

82.     Section 4(b) of the Administrative Procedure Act, 5 U.S.C. § 553(b), requires federal agencies to provide an opportunity for public comment before promulgating a final regulation.

83.     Federal Defendants have adopted Park-specific management plans or similar measures that permit ORV use in Parks without first promulgating special regulations, including:

Amistad National Recreation Area
Bighorn Canyon National Recreation Area
Big South Fork National Recreation Area
Cape Lookout National Seashore
Curecanti National Recreation Area
Glen Canyon National Recreation Area
Lake Meredith National Recreation Area
Little River Canyon National Preserve
Mississippi National Recreation Area
Whiskeytown National Recreation Area

84.     Federal Defendants have therefore not provided the public with an

adequate opportunity to comment on the use of ORVs in the Parks referred to in the

preceding paragraph.  In addition, the Secretary of the Interior has not determined that

ORV use "will not adversely affect . . . natural, aesthetic, or scenic values" in those

Parks.

85.     In at least some Parks, the permitted ORV use is not limited to designated

routes or areas, as required by NPS regulations.

86.     Federal Defendants' adoption of Park-specific management plans or

similar measures that permit ORV use on routes and areas that have not been designated

for ORV use through promulgation of a special regulation is therefore contrary to law and

without observance of procedure required by law.

## FOURTH CLAIM FOR RELIEF

### (Failure to Establish Procedures in Violation
### of Executive Order 11644)

87.     Section 10(e)(1) of the Administrative Procedure Act, 5 U.S.C. § 706(1),

authorizes a reviewing court to "compel agency action unlawfully withheld or

unreasonably delayed."

88.     Executive Order 11644 requires federal agencies managing public lands "to prescribe appropriate penalties for violation of regulations adopted pursuant to this order, and [to] establish procedures for the enforcement of those regulations."  The Executive Order also requires that agencies "monitor the effects of the use of off-road vehicles on lands under their jurisdiction."

89.     The NPS has not established procedures for enforcing its regulations regarding the use of ORVs.

90.     The NPS has failed to implement the Executive Order's monitoring requirement.

91.     Federal Defendants' failure to establish procedures for enforcing existing restrictions on ORV use and for monitoring the effects of such use is in violation of Executive Order 11644.

## FIFTH CLAIM FOR RELIEF

### (Violation of Freedom of Information Act and of the Administrative Procedure Act)

92.     FOIA, 5 U.S.C. § 552, requires each agency promptly to make available to any requesting person documents requested by the person, unless a statutory exception applies.  Pursuant to that Act, the Department of the Interior has adopted regulations providing the public with access to documents.  43 C.F.R. pt. 2.

93.     On December 12, 2003, Bluewater filed a request for documents under the Act and regulations described in the preceding paragraph.

94.     Federal Defendants have produced some documents responsive to Bluewater's request.  However, Federal Defendants have not completely responded to

that request and have withheld or redacted some documents requested by Bluewater

based on assertions of various exemptions under FOIA.

95.      Federal Defendants' failure to produce all documents in their possession

that are responsive to Bluewater's FOIA request more than two years after the request

was filed is in violation of FOIA and regulations of the U.S. Department of the Interior.

5 U.S.C. § 552(a)(6)(A)(i); 43 C.F.R. § 2.13.

96.      On information and belief, the exemptions under FOIA, 5 U.S.C. § 552(b),

asserted by Federal Defendants are not applicable to the documents withheld or redacted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

(1)      Adjudge and declare that the Federal Defendants' Response to the

Bluewater Rulemaking Petition is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law" and constitutes agency action unlawfully withheld

or unreasonably delayed; direct Federal Defendants to take legally required action and

otherwise reconsider their response to that Rulemaking Petition;

(2)      Enjoin Federal Defendants from permitting ORV use in the Parks

identified in the Second Claim for Relief that are not a national recreation area, a national

seashore, a national lakeshore or a national preserve unless and to the extent authorized

by the enabling statute;

(3)      Enjoin Federal Defendants from permitting ORV use in the Parks

identified in the Third Claim for Relief that are national recreation areas, national

seashores, national lakeshores or national preserves except by special regulations

lawfully adopted in compliance with Executive Order 11644 and enjoin Federal

Defendants from permitting ORV use in those Parks while steps are taken to consider and/or adopt such special regulations; or, in the alternative, direct Federal Defendants to make a final decision about continuing or terminating authorization of such interim use;

(4)     Order Federal Defendants  to develop and adopt regulations and other procedures designed to ensure ongoing compliance of rules and regulations relating to the use of ORVs in the National Park System;

(5)     Order Federal Defendants to develop and adopt regulations and other procedures designed to ensure that the Parks monitor in an effective manner the effects of ORV use on an ongoing basis;

(6)     Retain jurisdiction of this case to monitor Federal Defendants' compliance with the Court's orders;

(7)     Order Federal Defendants without further delay to produce to Bluewater all documents in their possession that are responsive to Bluewater's FOIA request, including documents withheld or redacted based on assertions of exemptions under FOIA unless Federal Defendants demonstrate, as to each such document, that a valid exemption applies to such document;

(8)     Award Plaintiffs costs and reasonable attorney fees for this action pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(d), because the Federal Defendants acted unlawfully and without substantial justification when they failed to respond to Bluewater's petition and when they permitted ORV use in the National Park System in violation of existing laws and regulations;

(9)     Award Plaintiffs costs and reasonable attorney fees under FOIA, 5 U.S.C. § 552(a)(4)(e), for that portion of this action brought under the Act; and

(10)   Grant the Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____
Robert D. Rosenbaum (D.C. Bar No. 090498)
Benjamin S. Martin (D.C. Bar No. 473939)
Christopher Anderson (D.C. Bar No. 483169)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
Phone:    (202) 942-5862
Fax:       (202) 942-5999

(Attorneys for Plaintiffs)

June __, 2006