UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRIENDS OF THE EARTH, | ) | |
| BLUEWATER NETWORK DIVISION, | ) | |
| *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2302 (RCL) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I. Background**

**A.  Rulemaking Petition & Civil Suit**

In December of 1999, plaintiffs, who are three environmental organizations, joined with some 70 other leading environmental groups in submitting a Petition for Rulemaking to the Director of the National Park Service ("NPS"), related to the use of off-road vehicles ("ORVs") in NPS units.  The petition initially sought NPS adoption of a rule prohibiting ORV use in all off-road areas of the National Park System, and other relief generally aimed at curtailing ORV use, which plaintiffs allege leads to substantial environmental damage to park units.  The parties engaged in ongoing discussions regarding the petition, and NPS informed plaintiffs that certain park units would begin the process of adopting "special regulations" to govern ORV use within

their bounds.[1]  Because this process was likely to take several years, plaintiffs requested that NPS

prohibit ORV use in the interim.  On May 3, 2005, NPS responded to the petition, explaining its

intention that individual park units that allowed ORV use would promulgate special regulations,

and that as far as the interim period was concerned, individual park units would be assigned to

evaluate existing use and make determinations as to whether interim use would be allowed.

On November 29, 2005, plaintiffs filed a complaint against the Department of the Interior

and the National Park Service in this Court, seeking review of NPS actions under the

Administrative Procedure Act ("APA").  As described more fully below, plaintiffs' Complaint,

as subsequently amended, challenges NPS' response to the Rulemaking Petition, including NPS'

refusal to repeal existing authorizations, both permanently and on an interim basis.  Plaintiffs

also seek review of the authorizations of ORV use at 18 specific park units, seek a regulation

defining "off-road vehicle usage," seek to compel NPS promulgation of regulations for the

monitoring of ORV use and the enforcement of ORV-use restrictions, and seek compulsion of a

response to outstanding requests for information under the Freedom of Information Act

("FOIA").  On February 1, 2006, the Court granted motions to intervene to two groups of

intervenor-defendants, the "ORV Defendants" and the "Manufacturer/User Defendants."[2]

---

[1]"Special regulations" are described more fully *infra*, in the section explaining the NPS regulatory environment.

[2]The "ORV Defendants" are the Cape Hatteras Access Preservation Alliance; American Sportfishing Association; Dare County, North Carolina; Hyde County, North Carolina; The United Four Wheel Drive Associations; The United Mobile Sports Fishermen; The United Land Action Fund; and The Recreational Fishing Alliance.  The "Manufacturer/User Defendants" are the Specialty Vehicle Institute of America; the Motorcycle Industry Council; and the Blueribbon Coalition.  The named defendants, the Department of the Interior and the National Park Service, will be referred to, for ease of reference, as "the government" or "NPS."

B.      **Regulatory Context**

The Organic Act for the National Park Service, 16 U.S.C. § 1 et seq., is silent on the

specifics of individual park management, leaving the NPS with "especially broad discretion on

how to implement [its] mandate." *Davis v. Latschar*, 202 F.3d 359, 365 (D.C. Cir. 2000)

(reprinting District Court opinion in *Davis v. Latschar*, 83 F.Supp. 2d 1 (1999) (D.D.C. 1999)

(Friedman, J.).  This discretion is generally exercised by individual park unit Superintendents,

who make decisions on ORV authorizations in accord with 36 C.F.R. § 4.10, *see* 52 Fed. Reg.

10670, 10679 (Apr. 2, 1987).  Section 4.10 prohibits the use of motor vehicles[3] on NPS land

except on park roads, in parking areas, and on routes and areas designated by the park unit

Superintendent.  The regulations thus prohibit all off-road motor vehicle use that is not

specifically authorized.[4]

If a park Superintendent wants to designate "routes and areas" for off-road motor vehicle

use, she must promulgate those designations as "special regulations" in compliance with 36

C.F.R. § 1.5, which establishes procedures and standards for a Superintendent to impose use

limits on an area of a park unit.  Specifically, the imposition or termination of a use restriction

must be justified in writing, and must be published as a rulemaking in the Federal Register if the

restrictions will result in significant alterations of public uses, will adversely affect a park unit's

"natural, aesthetic, scenic or cultural values," will require a long-term or significant change in the

---

[3]A term defined by Park Service regulations in a manner that includes the vehicles
identified by plaintiffs as ORVs.  *See* 36 C.F.R. § 1.4.

[4]"Park road" is defined, somewhat circularly, as "the main-traveled surface of a roadway
open to motor vehicles, owned, controlled or otherwise administered by the National Park
Service."  36 C.F.R. § 1.4.

park unit's resource management objectives, or are highly controversial. A Superintendent can make such designations only in park units that are national recreation areas, national seashores, national lakeshores, or national preserves.  36 C.F.R. § 4.10(b).

Also relevant is Executive Order No. 11644, 37 Fed. Reg. 2877 (1972), as amended by Executive Order No. 11989, 42 Fed. Reg. 26959 (1977).  Executive Order 11644 states that its purpose is to provide for procedures and policies "that will ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands."  *Id*. at §1.  Before designating areas of a park unit for ORV use, the agency must determine that ORV use "in such locations will not adversely affect their natural, aesthetic, or scenic values."  *Id.* at § 3(a)(4).  The agency also must "ensure adequate opportunity for public participation in the promulgation of such regulations and in the designation of areas and trails" for ORV use.  *Id.* at §3(b).

The Executive Order further requires that NPS "prescribe appropriate penalties for violation of regulations adopted pursuant to this order, and shall establish procedures for the enforcement of those regulations."  *Id.* § 6.  Similarly, it commands the agency to "monitor the effects of the use of off-road vehicles on [NPS] lands."  *Id.* § 8.  Additionally, when a park Superintendent determines that ORV use will cause or is causing "considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands," the Superintendent shall "immediately close such areas or trails to the type of off-road vehicle causing such effects," until she determines the adverse effects have been eliminated or adequate preventive measures have been implemented.  *Id.* § 9.

C.      **The Complaint**

The Second Amended Complaint sets forth five claims or counts, four of which are at issue here.  Count I challenges NPS' response to plaintiffs' rulemaking petition under the Administrative Procedure Act, specifically under 5 U.S.C. §§ 706(1) and 706(2).  It challenges the following aspects of the NPS response: (1) denial of the request to repeal authorizations for ORV use in eight park units where such use is not permitted; (2) denial of the request to repeal authorization of ORV use in 10 park units where such use was not authorized by special regulation, as required; (3) failure to repeal authorizations in the interim while responses to item (2) were considered; (4) denial of the request to adopt regulations defining "off-road vehicle usage"; and (5) denial of the requests to adopt regulations for monitoring ORV use and enforcing compliance with legal restrictions on ORV use.

Count II challenges the authorization of ORV use in eight park units where such use is not permitted at all, according to plaintiffs.  As to these eight park units, Count I challenges the denial of plaintiffs' request to repeal the authorizations, while Count II challenges the authorizations themselves.  Similarly, whereas Count I challenges the denial of plaintiffs' request to repeal ORV use in ten park units that allegedly have failed to follow the proper procedure for authorizing such use, which includes the promulgation of special regulations with opportunity for public participation, Count III challenges the allegedly improper authorizations themselves. Count IV seeks to compel NPS to adopt enforcement procedures and a monitoring program. Count V is the FOIA claim, which is not at issue here.

Each of the three defendants' groups has moved to dismiss.  The federal defendants move [51] to dismiss Counts I-IV, arguing that plaintiffs lack standing as to Counts II-IV, and that all

four counts fail to qualify for review under the APA, which the government describes as a jurisdictional defect.  The ORV Defendants moved [49] to dismiss Counts I-IV, alleging a lack of standing and failure to state a claim under the APA.  The Manufacturer/User Defendants moved [52] to dismiss the entire Second Amended Complaint, also alleging a lack of standing and a failure to state a claim under the APA.  Also before the Court is plaintiffs' Motion [60] to file a Surreply, to which no opposition was filed.  That motion is granted.

## II.    STANDING

As with any case, plaintiffs here must demonstrate that this suit constitutes a justiciable "case" or "controversy" within the Article III jurisdiction of the federal courts.  The party seeking to invoke federal jurisdiction bears the burden of establishing standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (hereinafter *"Defenders of Wildlife"*).  The plaintiff associations in this case do not allege injuries to themselves, but rely on injuries to their members.

"An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  There is no dispute that the interests asserted by plaintiffs – in the protection of environmental and aesthetic values in the National Parks – are germane to their interests.  In their complaint and in affidavits, plaintiffs have established that these interests are at the core of each group's mission.  Likewise, there is no dispute that this suit can proceed without the individual participation of any one member.  The point of contention is

6

whether the plaintiff associations have established the standing of any of their individual members.

At least one member of each plaintiff association must establish each of the three elements of standing.  To satisfy the case or controversy requirement of Article III, the "irreducible constitutional minimum" of standing, requires: "(1) that the plaintiff have suffered an 'injury in fact' – an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[5] *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Certain counts in the Complaint call for review of uniform, system-wide regulations that affect all park units the same.  For these, each association need only identify a single member who has standing as to those counts, and as to at least one unit of the National Park System.  But Counts II and III, and several aspects of Count I, challenge site-specific regulations at 18 individual park units.  As to these challenges to site-specific agency action, each plaintiff association must identify a member affected by each site-specific action.  In other words,

---

[5]In addition to these elements of constitutional standing, courts also adhere to a set of prudential standing principles, which include the requirement "that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  There is no dispute that the environmental interests asserted by the individual members of the plaintiff associations are within the zone of interests arguably to be protected by the statutory and regulatory provisions at issue.

plaintiffs must identify a member or member who can establish the elements of standing as to each of the 18 park units whose distinct regulations are at issue.

In reviewing Article III standing, each necessary element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife*, 504 U.S. at 561. A plaintiff "whose standing is not self-evident is required to demonstrate entitlement to review by means of record or supplemental evidence 'at the first appropriate point in the review proceeding.'" *CARE, Inc. v. FAA*, 355 F.3d 678, 685 (D.C. Cir. 2004) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002)). Because defendants have moved to dismiss, the proper standard at this juncture is that of a Rule 12(b)(1) motion challenging subject matter jurisdiction. *See Haase v. FBI*, 835 F.2d 902 (D.C. Cir. 1987).

As described below, it is true that the motions to dismiss for failure to state a claim under the APA are 12(b)(6) motions, and these have been converted to summary judgment by the submission and consideration of extraneous materials. But this does not impact the 12(b)(1) motions, which are not subject to conversion under Rule 12(b). It has been established that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990) (hereinafter "*National Wildlife Federation*").

## A.    Injury-in-Fact

In environmental cases, plaintiffs can establish injury-in-fact if they demonstrate that they

"use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 181 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Count I seeks review of the agency response to plaintiffs' rulemaking petition in two aspects. First, it seeks review of the petition's request for repeal of ORV-use authorization in 18 park units. Each plaintiff association must demonstrate that it has at least one member who has established standing as to each park unit at issue in this part of Count I, which challenges site-specific agency action. The same holds true for Counts II and III, which challenge agency authorization of ORV use in the same 18 park units. The rest of Count I seeks review of the agency response to the rulemaking petition's request for system-wide regulations defining off-road vehicle usage and for regulations related to enforcement and monitoring on a system-wide basis. Similarly, Count IV seeks to compel the agency to promulgate regulations related to enforcement and monitoring on a system-wide basis. For this part of Count I and for Count IV, each plaintiff association must establish that it has at least one member who has standing, which means one member who can establish the elements of standing as to some unit of the National Park System.

      **1.**      **Bluewater Network/Friends of the Earth**

The Bluewater Network Division of Friends of the Earth submitted the declaration of its Managing Director. *See* Declaration of Marsha Mather-Thrift, Ex. 32 to Plaintiffs' Opp. [56-2]. The Declaration states that Friends of the Earth has over 26,500 members in all 50 States, "regularly represents the interests of its members before the National Park Service," and typically acts through Bluewater when representing its members on issues related to ORV use. *Id.* at ¶¶ 6-

7.  The Declaration also states that the thousands of members of Friends of the Earth "are devoted to the outdoors and therefore have frequently visited the Parks and are likely to continue to do so in the future."  *Id.* at ¶ 7.

This is insufficient to establish injury-in-fact or any other aspect of standing, and hardly tries.  The Declaration does not identify a single member of the association, a single park unit that any of Bluewater's members visit, or a specific injury incurred anywhere.  Bluewater appears to expect that it can assert it has many members in every state and the Court will extrapolate from that the facts necessary to establish standing.  That is not how standing works.  No court can simply assume it has jurisdiction.

## 2.    Wildlands CPR

Wildlands submitted the declaration of Tim Dorny Peterson Jr.,  Decl. of Tim Dorny Peterson Jr., Ex. 42 to Plaintiffs' Opp. [56-3], who attests that he is a member of Wildlands and an avid parks user who in 2005 alone visited a number of parks, including four at issue here: Capitol Reef, Arches, Canyonlands, and Glen Canyon National Recreation Area.  Peterson says he visits Glen Canyon, Arches, and Canyonlands twice a year and intends to continue his regular visits to them each year.  *Id.* ¶ 2.  Peterson identifies specific ORV-caused damage to specific areas of each of these three parks, which has in turn diminished his enjoyment of those parks.  *Id.* ¶ 4.  Peterson's declaration allows the Court to discern that an injury has been alleged as to those park units, and thus establishes injury-in-fact as to Arches, Canyonlands, and Glen Canyon.

While the declaration lists other parks, including Capitol Reef, and says that ORV use diminishes Peterson's enjoyment of national parks, there is no attempt to link injuries to parks, or to assert that every injury is encountered at every park.  These general, conclusory parts of the

10

affidavit, just like the entirety of plaintiffs' Complaint, simply contains a list of parks and a list of general injuries, and expects the Court to connect the dots and assume that an affiant has sworn to things that are not stated in the affidavit.

As with Bluewater, Wildlands asks the Court to extrapolate from its membership numbers and make assumptions that are not supported by any allegations in the complaint or affidavits.  Wildlands submitted a declaration pointing out that it has 400 individual members and 152 organizational members, which in turn have over one million of their own members located throughout the country.  Declaration of Bethanie Walder, Ex. 33 to Plaintiffs' Opp. [56-2] at ¶ 5.  These individuals "have frequently visited numerous units of the National Park System ("Parks") and are likely to continue doing so in the future."  *Id.*  The declaration submitted on behalf of Wildlands asserts that an individual member would submit a declaration demonstrating his own standing – actually, two Wildlands members submitted declarations – and that this declaration "is only a sample."  *Id.* at ¶ 6.  This is insufficient to establish standing for any members other than those who actually submitted declarations.

**3.     National Parks Conservation Association ("NPCA")**

Multiple NPCA members submitted declarations.  Several of these are sufficient to establish injury-in-fact.  For instance, the affidavit of Frank Hensley does what a standing affidavit should do, and establishes injury-in-fact as to Big South Fork National River and Recreation Area.  Affidavit of Frank Hensley, Ex. 37 to Plaintiffs' Opp. [56-2].  Hensley demonstrates his very frequent use of the park unit – some 30 visits a year – and states that he intends to continue his regular visits to the nearby park unit in the future.  *Id.* ¶ 2.  He identifies specific ways in which ORV use in specified areas of Big South Fork have diminished his

11

enjoyment of that park.  *Id.* ¶ 4.  As with other affidavits submitted by NPCA, Hensley's strays

from the specific into a laundry list of system-wide problems that plague some of the unspecified

other park units he has visited, *id.* ¶¶3, 5, 6, but these defects do not diminish the adequate

showing he has made as to Big South Fork.

Ronald Tipton's first declaration established that in visits to Cape Lookout National

Seashore, which is at issue in Count III, he observed the ORV-caused degradation of "sensitive

habitat[s] for many species of shorebirds and other wildlife."  Declaration of Ronald J. Tipton,

Ex. 38 to Plaintiffs' Opp. [56-2] ¶ 5.  He later added that ORV noise had also diminished his

enjoyment of Cape Lookout, and that the use of ORVs at Cape Lookout is so damaging to his

experience that he has no interest in returning while they are permitted, which he would do "if

ORVs were not present."  Second Decl. of Ronald J. Tipton, Ex. 54 [60] ¶¶ 2-3.

Finally, plaintiffs submitted the declaration of Steve Bickerstaff of Texas, who states that

he and his wife "are regular users of the National Park System" and who identifies the dozens of

park units he and his wife have visited.[6]  Declaration of Steve Bickerstaff, Ex. 34 to Plaintiffs'

Opp. [56-2] at ¶ 2.  Most of those park units are not among the 18 at issue in Counts II and III,

but several are.[7]  Bickerstaff states that he and his wife have observed ORV use on "several of

---

[6]NPCA also submitted the declaration of Charlotte Carter, who appears to be the wife
referenced in Bickerstaff's first declaration.  Declaration of Charlotte Carter, Ex. 36 to Plaintiffs'
Opp. [56-2].  This declaration suffers from the same infirmities identified in Bickerstaff's,
without the saving reference to Amistad and without the supplemental declaration that helps
Bickerstaff establish his standing as to Amistad.  Carter has not established that she would have
standing in her own right.

[7]Specifically, Bickerstaff identifies Redwoods National Park in California and
Canyonlands National Park, Arches National Park, and Capitol Reef National Park in Utah, all at
issue in Count II, and Glen Canyon Recreation Area in Arizona and Utah and Amistad National
Recreation Area in Texas, both at issue in Count III.

our visits to the national parks," lists some of the general environmental damage that ORVs can cause, and mentions that he has observed serious soil erosion, the disturbance of wildlife sanctuaries, and the endangerment of animals and humans all caused by ORV use. *Id.* ¶ 3. He specifically mentions that his enjoyment of the National Parks, including Amistad, "has been diminished by ORV use within the parks." *Id.* ¶ 4. In a supplemental declaration, Bickerstaff explains that of the negative effects of ORV use catalogued in his first declaration, he has "observed many of these effects at Amistad." Second Declaration of Steve Bickerstaff, Ex. 55 [62] at ¶ 2. Specifically, he has observed soil rutting and erosion caused by ORVs, and his enjoyment of Amistad "has also been hampered by ORV noise." *Id.* ¶ 3. Bickerstaff visits the nearby Amistad "regularly" and plans to visit it in the future, but would enjoy returning more often "if ORVs were not present." *Id.* ¶¶ 3-4.

This declaration establishes injury-in-fact only as to Amistad. Bickerstaff has established that he visits the nearby park unit regularly, has identified specific harms caused by ORV use that have injured him – specifically soil rutting and erosion and ORV noise – and has stated his concrete plan to visit the nearby park unit in the future, as well as his stated desire to visit the park more frequently if not for the ORVs.[8] The rest of Bickerstaff's declarations fail to link any injury to any park unit, let alone a unit at issue in Count II or Count III. The Court cannot assume, since it has not been alleged, that *all* listed injuries have been felt at all listed parks, or even that *some* injury has been felt at all listed parks.

The affidavits establish an injury for each member discussed above and a desire to return

---

[8]An individual's likelihood to return bleeds over into the causation and redressability inquiries as well.

13

in the future that seems reasonably probable under the circumstances. Also, by saying they experience the ORV damage, they are alleging they use the parts of the subject park units that are affected, so they do not encounter the problems of *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), where a member of an environmental group only said that she used "unspecified portions of an immense tract of territory" in which some specific, localized harm would occur. *See also Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1235 (D.C. Cir. 1996) (though the area at issue may be expansive, it is sufficient to allege that plaintiff experiences the harm complained of in that area, without specifying where).

## B.    Causation

Having established injury, a plaintiff must also demonstrate causation – that it is "substantially probable" that the defendant's challenged actions, rather than the conduct of some unrelated third party, caused the injury to the plaintiff. *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). The injury that provides standing "must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Defenders*, 504 U.S. at 560 (internal punctuation omitted). In this case the injuries at issue were directly caused by ORV users, not by the government. But it is sufficient to show that agency action is a "substantial factor" in a third party's decision to engage in the activity at issue, especially where the agency is in a position to directly regulate and even proscribe that activity. *Tozzi v. HHS*, 271 F.3d 301, 309 (D.C. Cir. 2001). Because NPS governs all ORV use within the Park System, or even whether ORV use will be allowed, the injuries complained of are fairly traceable to the agency's conduct.

C.      Redressability

"Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996).  As to those park units for which injury-in-fact has been established, plaintiffs have also put forward sufficient allegations to establish redressability – if the Court grants some or all of the relief these plaintiffs seek, there presumably will be some additional restriction on ORV use in the relevant park units, which will result in at least some increase in plaintiffs' ability to enjoy the aesthetic, environmental, and related values of the park units.[9]  Plaintiffs have put forward allegations that support the reasonable inference that these members will return to these park units, such that their stake in this dispute is sufficiently concrete.  While it is far from a certainty that judicial review will result in all of the relief that appears to be necessary to satisfy plaintiffs, "'[a] significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered' will suffice for standing." *National Parks Conservation Assoc. v. Manson*, 414 F.3d 1, 7 (D.C. Cir. 2005)  (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)).

Because Wildlands CPR and NPCA have identified numerous individual members who

---

[9]Plaintiffs came perilously close to pleading themselves out of court in the supplemental declaration of NPCA member Ronald Tipton, who stated that the use of ORVs at Cape Lookout is so damaging to his experience that he has no interest in returning while they are permitted, which he would do "if ORVs were not present."  Second Decl. of Ronald J. Tipton, Ex. 54 [60] ¶¶ 2-3.  Most forms of relief that plaintiffs seek would not allow the Court to prohibit ORV use in Cape Lookout all together, which appears to be the only way to redress Mr. Tipton's professed injury.  But since it is conceivable that plaintiffs could obtain this relief through successful prosecution of this suit, it is enough to establish redressability.  *See City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) ("[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.").

establish their standing as to specific park units, those organizations have standing to pursue

Count IV, which seeks to compel the NPS to promulgate system-wide regulations that will

impact the park units mentioned in the declarations and thus the individual Wildlands and NPCA

members.[10]  For the same reason, those organizations have standing to pursue the aspects of

Count I that relate to their requests for system-wide regulations defining off-road usage and

relating to monitoring and enforcement.

In summary, Bluewater/Friends of the Earth has not established the standing of any of its

members, and thus lacks standing on Counts I through IV.  Wildlands CPR has established its

standing to pursue the systemic portions of Count I, Count IV, and Counts I, II, and III insofar as

they apply to Arches, Canyonlands, and Glen Canyon.  NPCA has established its standing to

pursue the systemic portions of Count I, Count IV, and Count I and Count III, insofar as they

apply to Big South Fork, Cape Lookout, and Amistad.  As to Count I, the Court uses "systemic

portions" to refer to the request for review of NPS' response to the rulemaking petition's request

for a system-wide definition of off-road vehicle usage, and for promulgation of system-wide

regulations regarding enforcement and monitoring.  All three plaintiffs have standing in their

own right to pursue Count V, the FOIA claim.

Plaintiffs have argued that the declarations they submitted "are only a sample," and that

"it cannot reasonably be questioned" that their individual members have standing as to every

---

[10]In addition to demonstrating standing as to some park units at issue in Counts II and III,
plaintiffs' declarations may establish the standing of individual members at other park units,
which is relevant to their standing for the system-wide components of Counts I and IV.  Because
NPCA and Wildlands have already established standing to pursue the system-wide claims, it is
unnecessary for the Court to opine on the sufficiency of their allegations as to other parks.

park unit in the National Park System.[11]  They also repeatedly fall back on the stage of the

pleadings, arguing that they are "free to rely on reasonable inferences – and even reasonable

assumptions – to support their standing."[12]  Finally, plaintiffs assert that they are entitled to

standing on all their claims because courts may, at this stage, "presume that general allegations

embrace those specific facts that are necessary to support the claim." *National Wildlife

Federation*, 497 U.S. at 889.

Plaintiffs are sorely mistaken as to what a court can assume in a standing inquiry.  First,

providing "samples" of association members who might have standing is insufficient where site-

specific agency action is involved, such that standing must be established as to specific locations.

Second, a court may presume that a general factual allegation embraces the different, specific

facts that are necessary to render the major premise true.  In other words, plaintiffs need not spell

out every factual element necessarily entailed by a basic averment of fact.  But a court cannot

supply an entirely new, completely absent major premise that is necessary to establish standing.

In their complaint and most of their affidavits, the most plaintiffs have done is to supply the

Court with a list of park units a member has visited.  They then supply the Court with a list of

ways in which ORV use damages a member's enjoyment of parks, in general.  But in a case

where *specific* park units are at issue, and where plaintiffs must assert redressable injury-in-fact

at specific parks, plaintiffs fail to allege which injuries from List B match up with which park

units from List A – or even to assert that all the injuries from List B are experienced at all the

---

[11]*See* Declaration of Tom Martin, Ex. 30 to Plaintiffs' Opp. [56] (submitted on behalf of NPCA).

[12]Plaintiffs' Surreply [61] at p. 3.

park units from List A.  The Court has instead been given the equivalent of the following: "I have gone to the following places....I have experienced the following injuries when I have gone to places.....I have standing as to places."  What plaintiffs have asked the Court to do is to take such distinct assertions of general fact and assume additional, distinct assertions of general fact that are necessary to link up the first two.

Plaintiffs identify cases in which courts have been able to make reasonable inferences from facts actually alleged, or to rely on circumstantial evidence actually alleged, in order to determine that standing had been established.  For instance, the court in *Wilderness Society v. Norton*, 434 F.3d 584 (D.C. Cir. 2006), stated that it was "not unreasonable to assume" that plaintiffs' allegations that a court order would redress their injury was valid, since plaintiffs had laid out the causal chain by which the desired relief might alleviate the injury at issue.  *Id.* at 594-95.  But in that case, unlike this one, the plaintiff association submitted affidavits demonstrating its members' "use and enjoyment of the parks in question."  *Id.* at 594.  The court was not willing to *assume* that plaintiffs' members faced injury in the areas at issue – plaintiffs had to say that this was the case.  Likewise, in *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 270, 273 (D.C. Cir. 1988), where plaintiffs had established that wide-scale mismanagement of waste had caused environmental injury at specific sites in the past, and conditions had not changed, the court held that it was reasonable to infer that injury would recur at those same sites.  Once again, that court allowed plaintiff reasonable inferences from facts actually alleged, and required that plaintiffs allege the necessary predicate facts – the places they alleged injury and the injuries they alleged at those places.  *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000) (en banc), also cited by plaintiffs, is to much the same effect – it allows a

court to make reasonable inferences from facts actually alleged, and does nothing to condone the kind of shell game in which plaintiffs ask this Court to indulge.

Plaintiffs' general enjoyment of the National Parks, and the assertion that they experience injuries at unspecified parks, is insufficient to establish standing at any particular park unit, and for several of the counts in this case, particular units are at issue. "In the absence of reference to past (and anticipated future)" injury tied to a specific place, "a mere expression of enjoyment of all things sylvan is inadequate to show a directly affected interest," *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1236-37 (D.C. Cir. 1996) (internal quotation marks omitted), even at this stage of the litigation.

All plaintiffs are left with is their general assertion that they have a sincere interest in this matter, and their belief that the Court can assume from their sincerity and strength in numbers that there are facts out there that, if the plaintiffs and the Court were to bother to take the time, could be collected and memorialized to establish standing. But when the constitutional authority of this Court to hear a case is at issue, we take the time to find and allege jurisdictional facts, or we go no further.[13]

---

[13]The failure to establish Article III standing is separately fatal to plaintiffs' ability to state a claim for review under the APA, which has its own standing requirement. *See* 5 U.S.C. § 702. *See also Sierra Club v. Morton*, 405 U.S. 727, 739-40 (1972) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA. The Sierra Club is a large and long-established organization, with a historic commitment to the cause of protecting our Nation's natural heritage from man's depredations. But if a 'special interest' in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization, however small or short-lived. And if any group with a bona fide 'special interest' could initiate such litigation, it is difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so.").

### III.     Failure to State a Claim Under the APA

The APA supplies a party's cause of action and is not, as is sometimes stated, a source of jurisdiction.  *See, e.g., Karst Environmental Education & Protection, Inc. v. EPA*, 2007 U.S. App. LEXIS 1943, Case No. 06-5059 at *17 (D.C. Cir. Jan. 30, 2007) (citing *Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006) ("the APA's final agency action requirement is not jurisdictional")); *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n. 3 ("The judicial review provisions of the APA are not jurisdictional"); *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

A dismissal for failure to satisfy the APA's requirements for judicial review of agency action is thus a dismissal for failure to state a claim under Rule 12(b)(6), not a dismissal for want of subject matter jurisdiction under Rule 12(b)(1), as the government mistakenly contended. Both groups of intervenors correctly styled their motions as seeking dismissal for failure to state a claim under the APA, and the Manufacturer/User Intervenors specifically invoked Rule 12(b)(6).  Because all parties submitted matters outside the pleadings on this motion, which have been considered by the Court, the motion will be converted to one for summary judgment under Rule 56.  *See The Fund for Animals Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13, 18 n.4 (D.C. Cir. 2006) (defendant's motion to dismiss on ground that there was no "final agency action" to review under APA is a 12(b)(6) motion for failure to state claim, which should be converted to motion for summary judgment where "the parties presented 'matters outside the pleading,' which the district court did not exclude.").

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  On summary judgment, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.* 56(e).

As a threshold matter, the APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  Since no other statute makes the actions at issue in this case reviewable, they must constitute "final agency action" reviewable directly under the APA.  The APA defines an "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  The Supreme Court has explained that to be "final," an agency action must "mark the consummation of the agency's decisionmaking process, and must either determine rights or obligations or occasion legal consequences." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 482 (2004); *see Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Each Count will be considered in turn to determine whether it states a claim reviewable under the APA.

## A.    Count I

Portions of Count I seek review of the agency's response to the rulemaking petition's request for system-wide regulations – defining off-road vehicle usage and dealing with enforcement and regulation.  The agency issued its final response to those elements of the rulemaking petition, so there is final agency action.  *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1037 (D.C. Cir. 2002) (denial of rulemaking petition is final agency action

subject to APA review).  As to the request for permanent or temporary repeal of ORV-use authorizations, there appears to be no dispute that NPS responded as to 12 park units, and those responses are thus also final agency action subject to review.

But as to six park units, the government argues that it has not yet taken final action, since it has asked those units to determine whether current ORV use should be allowed to continue during the interim period while those parks consider the long-term status of ORV-use authorization.[14]  The government is correct.  The NPS responded to the rulemaking petition by delegating to those park units the initial decision whether to allow continued use.  In its motion to dismiss, the government indicated that the individual park plans, once made, were subject to review and approval by NPS, and that appears to be the stage at which the government now finds itself.  Insofar as it challenges the denial of the request to repeal interim ORV-use authorization at these six parks, Count I fails to challenge final agency action and is not appropriate for review.[15]

To be final, agency action must constitute the "consummation" of the agency's decisionmaking process, *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948), and cannot be "of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  To the contrary, the NPS reponse "does not mark the consummation of an agency decisionmaking process but instead reflects an interim or

---

[14]Those park units are Big South Fork, Cape Lookout, Curecanti, Glen Canyon, Lake Meredith, and Little River Canyon.

[15]This impacts the claims related to Big South Fork, Cape Lookout, and Glen Canyon, for which standing has been established.  Claims as to the other park units would also be dismissed on standing grounds.

interlocutory decision to postpone the decisionmaking process to a more convenient time and to a more comprehensive process." *Shawnee Trail Conservancy*, 343 F.Supp. 2d 687, 701 (S.D. Ill. 2004). Where individual agency sub-units "must go through their own deliberation and decisionmaking process" before any change in the status quo, this is not final agency action. *National Wildlife Federation* at 893. *See also Fund for Animals, Inc. v. Williams*, 391 F.Supp. 2d 132, 137-38 (D.D.C. 2005) (Urbina, J.) (collecting cases showing that commencement of a decisionmaking process, with no change in status quo, is not final agency action).

Plaintiffs argue that the lack of a response as to these units is the constructive equivalent of a final action and is reviewable under § 706(2), or in the alternative, is agency action unlawfully withheld or unreasonably delayed, and should be compelled under § 706(1). In support, plaintiffs rely on *Environmental Defense Fund v. Hardin*, 428 F.2d 1093 (D.C. Cir. 1970), where the Court of Appeals heard a challenge to the Agriculture Department's failure to suspend immediately the registration of DDT on an interim basis pending a determination whether to permanently suspend the registration. The court limited that case to its own unique facts, where "even a temporary refusal to suspend results in irreparable injury on a massive scale." *Id.* at 1100. In that unique case, the exigent circumstances, the lack of any substantive indication that an interim decisionmaking process was under way, and the reality that all facts necessary for the suspension decision were already in front of the agency, combined to convince the court that "administrative action [was] the equivalent of an order denying relief." *Id.* There are no such exigent circumstances threatening life and limb in this case to render this the rare equivalent of relief denied, particularly since there are indications that the agency is working toward resolution of the interim-use issue.

As to compelling a decision as action unlawfully withheld under § 706(1), plaintiffs have

not identified a deadline or duty that has been violated.  *Cf. Ecology Center, Inc. v. United States*

*Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999) ("This court has refused to allow plaintiffs to

evade the finality requirement with complaints about the sufficiency of an agency action dressed

up as an agency's failure to act.") (internal quotations omitted).

**B.      Counts II and III**

These two claims challenge the NPS authorization of ORV use at the 18 park units.  At

eight units, plaintiffs aver that such use is not permitted at all, so the authorization is unlawful.

At the other ten, plaintiffs allege that the authorizations, which are otherwise permitted, were not

put into place through the correct procedure, which calls for the promulgation of special

regulations.  The promulgation of these regulations would, among other things, require findings

by the Secretary of Interior and opportunities for public comment and would, plaintiffs hope,

result in further restrictions on ORV use, if not outright prohibitions.

The Court cannot review the authorizations at issue in Count II or Count III under the

APA because plaintiffs have not identified any discrete agency action that the Court is asked to

review.  A sure sign that a complaint fails the "final agency action" requirement is when "it is not

at all clear what agency action [plaintiff] purports to challenge."  *Independent Petroleum Assoc.*

*of America v. Babbitt*, 235 F.3d 588, 595 (D.C. Cir. 2001).  A plaintiff "must direct its attack

against some particular 'agency action' that causes it harm," because if a court does not limit its

review to "discrete" agency actions, it risks embarking on the kind of wholesale, programmatic

review of general agency conduct for which courts are ill-suited, and for which they lack

24

authority.  *National Wildlife Federation*, 497 U.S. at 891, 885-86.

Each park unit has already made a specific, separate decision to authorize ORV use – and it is quite possible that some, if not all, of the park units at issue made multiple decisions to authorize different specific uses in different specific parts of their territory at different times. Each of these discrete agency decisions was based on different competing factors and considerations.  Plaintiffs do not identify *any* discrete, historical agency action that resulted in the existing authorization of ORV use at a specific park unit. "The federal courts are not authorized to review agency policy choices in the abstract." *Fund for Animals*, 460 F.3d at 18.  Plaintiffs are correct that a court may review a "completed universe of orders or regulations," *National Wildlife Federation* at 890, but the Court must be pointed in the direction of that universe. Without any direction, the Court cannot tell which agency actions are at issue – and, importantly, which agency actions related to the use of ORVs in relevant park units may *not* be at issue.

A court cannot review agency action on the merits, let alone make the necessary threshold evaluations of an APA case, such as finality, if it does not know what agency action is being challenged.  Plaintiffs contend that there is no need for them to spell the relevant agency actions out in their complaint because they are identified in the responses of individual park units to a survey circulated by NPS in cooperation with plaintiffs.  Defendants counter that this is insufficient because, among other things, not all of the responses are in the record before the Court.  Plaintiffs' argument fails for this reason, among others.  A court has to know what is being challenged.

Plaintiffs appear to contend that when the NPS denied the rulemaking petition's request for a repeal of ORV-use authorizations, this constituted a fresh *adoption* of those authorizations,

and it is this adoption that forms the agency action they are really challenging.  This novel theory cannot hold water because, among many other reasons, it would thwart statutes of limitations by allowing for instant revival of challenges to decades-old agency actions, and because it would open the door for the kind of programmatic challenges courts cannot hear, simply by treating an agency's "adoption" of an existing program as discrete agency action.  *See Sierra Club v. Peterson*, 228 F.3d 559, 564 (5th Cir. 2000) (en banc) (an agency's "general allowance" of certain conduct is not a discrete, final agency action that can be reviewed).

## C.    Count IV

Count IV is brought under 5 USC § 706(1), which allows a court to compel "agency action" that is withheld contrary to law or is unreasonably delayed.   "Agency action" is defined as "the whole or a part of an agency rule, order license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  To be the kind of "agency action" that can be compelled under § 706(1), the thing to be compelled must be "a discrete action," *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (emphasis removed) (*hereinafter "SUWA"*), equivalent to the actions specifically set forth in the definition of "agency action" at § 551(13), which are further defined at §§ 551(4), (6), (8), (10), and (11).  Furthermore, nothing can be compelled under § 706(1) unless it is "legally *required*."  *SUWA* at 63 (emphasis in original).  Section 706(1) "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *SUWA* at 64 (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)).  In other words, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *SUWA* at 64

(emphasis in original); *see also Shawnee Trail*, 343 F.Supp. 2d 687, 700 (noting weight of authority holding that "§ 706(1) suits could only be maintained where there was a clear, mandatory, non-discretionary duty to act, not for situations in which a plaintiff is merely dissatisfied with the way an agency exercises its discretion.").

Plaintiffs claim that NPS is under a duty as set forth in Executive Order 11644. Section 6 of E.O. 11644, titled "Enforcement," states in its entirety:

> The respective agency head shall, where authorized by law, prescribe appropriate penalties for violation of regulations adopted pursuant to this order, and shall establish procedures for the enforcement of those regulations. To the extent permitted by law, he may enter into agreements with State or local governmental agencies for cooperative enforcement of laws and regulations relating to off-road vehicle use.

The relevant portion of Section 8, which is titled "Monitoring Effects and Review," reads as follows:

> The respective agency head shall monitor the effects of the use of off-road vehicles on lands under their jurisdictions. On the basis of the information gathered, they shall from time to time amend or rescind designations of areas or other actions taken pursuant to this order as necessary to further the policy of this order.

As to monitoring, the Executive Order says that the agency head "shall monitor" the effects of ORV use, and on the basis of the information gathered, "shall from time to time" take appropriate action. The Order thus requires monitoring and appropriate response, which NPS does. It does not require the adoption of formal monitoring procedures or a "program," as called for plaintiffs. What plaintiffs seek is not required by the Order, and thus cannot serve as a foundation for review under the APA.

Similarly, plaintiffs' Complaint demands that NPS "develop and adopt regulations and

27

other procedures designed to ensure ongoing compliance of rules and regulations relating to the use of ORVs in the National Park System." 2AC at 40, ¶ 4. The rulemaking petition originally asked for increased enforcement of existing rules on ORV use and promulgation of "other methods of preventing unlawful use." As the government points out, NPS has adopted regulations on ORV use and there are punishments in place for certain violations of those rules. What plaintiffs are seeking, apparently, is increased enforcement of the existing rules and additional regulations on ORV use.[16] Section 6 of the Executive Order requires NPS to prescribe penalties for violations of regulations and to adopt procedures for enforcement. NPS has done that. NPS is under no duty to adopt specific penalties that plaintiffs might prescribe, nor is it under any duty to achieve a certain level or kind of enforcement.

Plaintiffs are seeking to change the manner in which NPS exercises its discretionary enforcement power. Section 706(1) is not a gateway for such a challenge. Even when a court can compel an agency to act, where "the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *SUWA* at 65. On both aspects of Count IV, the reality is that NPS "has been acting, but the environmental groups simply do not believe its actions have complied" with the Executive Order. *Sierra Club v. Peterson*, 228 F.3d 559, 568 (5th Cir. 2000) (en banc). *See also Public Citizen v.*

---

[16]The government argues that plaintiffs' request for additional regulations was made in subsequent correspondence between the parties, not in the original rulemaking petition. Plaintiffs respond that the petition encompassed their request for regulations, and at any event, subsequent correspondence between the parties refined, expanded, and otherwise clarified the rulemaking petition, such that if a request for regulations was not originally in place, one was added by amendment. It is not necessary for the Court to resolve this dispute, since if plaintiffs' requests are assumed to have been properly made, they call for action the agency is not obligated to take, and thus are not reviewable under the APA.

*Nuclear Regulatory Commission*, 845 F.2d 1105, 1108 (D.C. Cir. 1988) ("The agency has acted . . . Petitioners just do not like what the Commission did . . . Our acceptance of petitioners' argument would make a nullity of statutory deadlines.  Almost any objection to an agency action can be dressed up as an agency's failure to act.").  What plaintiffs seek is not actually a review of agency inaction, but a review of the exercise of agency discretion, which is generally not reviewable under *Heckler v. Chaney*, 470 U.S. 821, 832-33 (1985).  For these reasons, Count IV is not an appropriate invocation of APA review, and judgment for defendants is appropriate as to Count IV.

## IV.    CONCLUSION

This leaves us with the following state of affairs:

Bluewater Network/Friends of the Earth: The motions to dismiss Counts I, II, III, and IV of the Second Amended Complaint as to plaintiff Bluewater Network/Friends of the Earth are GRANTED, because plaintiff lacks standing and thus cannot invoke the subject matter jurisdiction of this Court.  These Counts of the Complaint are dismissed as to Bluewater Network/Friends of the Earth.  Bluewater Network/Friends of the Earth may proceed on its FOIA claim.

Wildlands CPR: Wildlands CPR may proceed with the aspects of Count I that seek review of the National Park Service's response to those portions of plaintiffs' rulemaking petition that sought system-wide regulations defining off-road vehicle usage and monitoring and enforcement regulations pertaining to ORV use.  *See* Second Amended Complaint ¶¶ 73(c), 73(d), 73(e).  Wildlands CPR may also proceed on the portions of Count I that seek review of the

Park Service's response to those portions of plaintiffs' rulemaking petition that sought repeal of ORV-use authorizations in Arches National Park and Canyonlands National Park. *Id.* ¶¶ 73(a), 73(b). Wildlands may also proceed on the FOIA claim. The other park-specific aspects of Count I are dismissed for failure to establish standing, with the exception of Count I as it applies to Glen Canyon. Defendants moved to dismiss for failure to state a claim, and all parties submitted material outside the pleadings to the Court. Those motions are thus converted to ones for summary judgment. Summary judgment on that part of Count I that relates to Glen Canyon is awarded to defendants, because there is no final agency action to review. Summary judgment is also granted to defendants on Counts II, III, and IV, which do not state a claim under the APA.

      National Parks Conservation Association: NPCA may proceed with the aspects of Count I that seek review of the National Park Service's response to those portions of plaintiffs' rulemaking petition that sought system-wide regulations defining off-road vehicle usage and monitoring and enforcement regulations pertaining to ORV use. *See* Second Amended Complaint ¶¶ 73(c), 73(d), 73(e). NPCA may also proceed on the portions of Count I that seek review of the Park Service's response to those portions of plaintiffs' rulemaking petition that sought repeal of ORV-use authorizations in Amistad National Recreation Area. *Id.* ¶ 73(b). NPCA may also proceed on the FOIA claim. The other park-specific aspects of Count I are dismissed for failure to establish standing, with the exception of Count I as it applies to Big South Fork National Recreation Area and Cape Lookout National Seashore. Summary judgment on that part of Count I that relates to Big South Fork and Cape Lookout is awarded to defendants, because there is no final agency action to review. Summary judgment is also granted to defendants on Counts II, III, and IV, which do not state a claim under the APA.

A separate order shall issue this day.

Signed by United States District Judge Royce C. Lamberth, March 21, 2007.